IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| HEIDY CIFUENTES RIVERA, | ) |
|         Petitioner, | ) |
| v. | ) Case No. 4:25-cv-00570-RK |
| JIM ARNOTT, GREENE COUNTY, MISSOURI SHERIFF; et al., | ) |
|         Respondents. | ) |

## ORDER

Petitioner Heidy Cifuentes Rivera is currently being held in the custody of the Department of Homeland Security, Immigration and Customs Enforcement in the Green County Justice Center in Springfield, Missouri. Before the Court is Petitioner's verified petition for writ of habeas corpus, seeking release from detention and other declaratory and injunctive relief related to her detention. (Doc. 1.) The verified petition is fully briefed. (Docs. 7, 8, 9.) In addition, Petitioner and Federal Respondents[1] submitted supplemental briefs as ordered by the Court. (Docs. 10, 11, 12.) Following a writ hearing on September 24, 2025, and upon the Court's request, Federal Respondents submitted further documentation concerning the revocation of Petitioner's supervised release and any post-detention initial interview conducted when she was initially detained. (Doc. 18.)

After careful consideration and review, the Court **ORDERS** that the verified petition for writ of habeas corpus is **GRANTED as to Count 3** for the reasons explained below.[2] Accordingly, the Court **FURTHER ORDERS** that (1) Petitioner be immediately released, and (2) that upon

---

[1] "Federal Respondents" refers to Respondents Kristi Noem, Secretary, U.S. Department of Homeland Security; Christopher Chamberlain, Acting Assistant Field Office Director for the Kansas City Field Office; and the U.S. Department of Homeland Security.

State Respondent Greene County Sheriff Jim C. Arnott filed a show-cause response indicating that "[i]f the Court orders ICE or federal respondents to release Petitioner, or if the Court denies the petition, either way, [Sheriff Arnott] will follow the Court's orders." (Doc. 6 at 2, ¶ 10.)

[2] Because the Court grants Petitioner habeas relief as to Count 3 for the reasons explained below, the Court need not and does not consider any other ground for relief asserted in the habeas petition.

immediate release, the conditions of the prior order of supervision which were in effect prior to her detention be reinstated.

**Background**

The facts in this case are largely uncontroverted and not in dispute. Petitioner is a citizen and national of Guatemala. (Doc. 1-3 at ¶ 1.) She unlawfully entered the United States in May 2008 and was issued a Notice to Appear (Form I-862) after she surrendered to Customs and Border Patrol officials. (*Id.* at ¶ 2.) One year later, Petitioner was charged by the Department of Homeland Security with inadmissibility as an alien present in the United States without having been admitted or paroled in violation of federal immigration law. *See Cifuentes-Rivera v. Holder*, 559 F. App'x 585, 586 (8th Cir. 2014). Petitioner did not contest the factual allegations in the Notice to Appear and "conceded [her] inadmissibility." *Id.* Instead, Plaintiff sought asylum and withholding of removal along with protection under the United Nations Convention Against Torture as ratified by the United States. *Id.*; (Doc. 1-3 at ¶ 3.)

Petitioner's application for asylum was denied two-and-a-half years later on October 18, 2010, and a final order of removal was entered. (Doc. 1-3 at ¶ 4.) Petitioner appealed to the Board of Immigration Appeals, which affirmed the final order of removal and dismissed her appeal on January 7, 2013. (*Id.* at ¶ 5; Doc. 1-4 at 2-3.) Petitioner then filed a petition for review before the United States Court of Appeals for the Eighth Circuit. The Eighth Circuit denied the petition for review on March 25, 2014. *Cifuentes-Rivera*, 559 F. App'x 585.

Approximately six months later, on October 7, 2014, ICE sent a demand letter to Petitioner's bond obligor instructing that Petitioner be delivered to ICE's Enforcement and Removal Operations on October 23, 2014, for her removal from the United States. (Doc. 7-1 at ¶ 14.) After Petitioner did not appear for her October 23 removal, a second demand letter was sent on February 13, 2015, instructing that Petitioner be delivered to ICE's Enforcement and Removal Operations on March 15, 2015, to be removed from the United States. (*Id.* at ¶ 15.) Petitioner did not surrender for removal on that date, either. (*Id.* at ¶ 16.)

Three years later, on April 26, 2018, ICE agents encountered Petitioner while they were looking for someone else and instructed Petitioner to go to the local ICE office the next day. (Doc. 1-3 at ¶ 9.) When Petitioner appeared at the ICE office on April 27, 2018, as instructed, she was placed under an Order of Supervision and released. (Doc. 1-2; Doc. 1-3 at ¶¶ 9, 10.) Petitioner asserts that since she was placed under the Order of Supervision she has "always complied with

every requirement," including checking in with ICE officials each year, and has "never violated the terms and conditions of my release." (Doc. 1-3 at ¶¶ 10, 12.)[3] On August 13, 2018, Petitioner filed a motion to reopen her immigration case with the Board of Immigration Appeals, which was denied on June 25, 2019. (Doc. 7-1 at 4, ¶ 19.)

On May 23, 2025, seven years after Petitioner had been placed under the Order of Supervision, a Notice of Revocation of Release was issued. (Doc. 7-1 at ¶ 20.) It is not clear that Petitioner received this notice, whether before or after she was detained. The only copy of the Notice of Revocation of Release submitted by Federal Respondents in the post-hearing supplemental filing, as Deportation Officer Marissa Saez acknowledges in the attached affidavit, includes a "proof of service" portion of the filing that was not completed. (Doc. 18-1 at 3, ¶ 10; Doc. 18-2; *see also* Doc. 18 at 1 (acknowledging that "Federal Respondents do not have evidence regarding whether Petitioner received a copy of this notice.").) Deportation Officer Saez attests that ICE "has been unable to locate a copy of a Notice of Revocation of Release containing a completed Proof of Service section." (Doc. 18-3 at ¶ 10.)

The Notice of Revocation of Release states that Petitioner's order of supervision was revoked "based on a review of your official alien file and a determination that there are changed circumstances in your case," specifically that "ICE has determined that you have violated conditions of your release that were listed in the Order of Supervision you were issued at the time of your release from ICE custody." (Doc. 18-2 at 1.) The Notice of Revocation of Release further states that Petitioner would "remain in ICE custody at this time" and that she "will promptly be afforded an initial informal interview at which you will be given an opportunity to respond to the reasons for the revocation," including by "submit[ting] any evidence or information you wish to be reviewed in support of your release." (*Id.*)

On May 27, 2025, four days after the Notice of Revocation of Release was issued, Petitioner was taken into custody by federal immigration authorities when she appeared at the local

---

[3] In the post-hearing supplement provided by Federal Respondents, Deportation Officer Marissa Saenz attests that one condition of the 2018 Order of Supervision was that Petitioner "appear in person at the time and place specified upon each and every request by" federal immigration officials. (Doc. 18-1 at 1, ¶ 7; *see* Doc.18-3 at 3 (Order of Supervision).) Officer Saenz further attests that "Petitioner failed to check in with ICE through the Intensive Supervision Appearance Program ("ISAP") as instructed on November 30, 2024 and April 18, 2025." (Doc. 18-1 at 3, ¶ 8.) No further information was provided regarding the nature or circumstances surrounding these required appearances. Nor does it appear that Petitioner was ever informed of these specific reasons for the revocation of the supervised release order.

3

ICE office for her annual check-in as required under the 2018 Order of Supervision. (*Id.* at ¶ 21; *see* Doc. 1-3 at ¶¶ 13, 16.) A removal flight to Guatemala was scheduled for June 10, 2025. (*Id.*)[4]

Petitioner attests that when she was arrested on May 27, 2025, she was not given any documentation but was "simply told that I was being arrested and would be deported." (Doc. 1-3 at ¶ 16.) The verified petition for writ of habeas corpus further attests (through counsel, pursuant to 28 U.S.C. § 2242) that "[n]o interview or any other administrative process has been provided to [Petitioner] at any time regarding her continued custody." (Doc. 1 at 10, ¶ 16.) At the hearing, counsel for Federal Respondents was not able to say whether an initial post-detention informal interview had occurred; Federal Respondents did not state whether an initial post-detention informal interview had occurred in their response or affidavit from Deportation Officer Bradley McNary that was attached to their response, either. Accordingly, after the hearing, the Court requested that Federal Respondents supplement the record in this regard.[5] Deportation Officer Saenz attests in the supplemental filing that "record of an informal interview with Petitioner regarding the reasons for revocation of [her 2018 Order of Supervision] has not been found." (Doc. 18-1 at 3, ¶ 11.)

Ten days after Petitioner was detained—and four days prior to the scheduled removal flight to Guatemala—Petitioner filed a second motion to reopen her immigration case with the Board of Immigration Appeals along with an emergency motion for stay of removal. (Doc. 1-3 at ¶ 19; Doc. 7-1 at ¶ 25.) The Board of Immigration Appeals granted the emergency motion for stay of removal on June 9, 2025, one day prior to the scheduled removal flight. (Doc. 1-1 at 2.)

Petitioner filed this petition for writ of habeas corpus on July 23, 2025. Approximately one month later, ICE issued a decision to continue her detention pursuant to 8 C.F.R. § 241.4(h), finding that "ICE is in receipt of or expects to receive the necessary travel documents to effectuate [Petitioner's] removal, and removal is practicable, likely to occur in the reasonably foreseeable future, and in the public interest." (Doc. 15-1 at 1.) Petitioner remains in federal custody and is

---

[4] ICE Enforcement and Removal Operations Deportation Officer Bradley McNary attests that a passport or temporary travel document is not required for Petitioner's removal to Guatemala because Guatemala participates in the Electronic Nationality Verification program. (Doc. 7-1 at ¶ 22.)

[5] Specifically, *inter alia*, the Court requested that Federal Respondents "stat[e] whether the initial informal interview occurred in compliance with *either* 8 C.F.R. § 241.4(l)(1) or 8 C.F.R. § 241.13(i)(3), whichever is applicable . . . and if applicable, when (i.e., the date) and how (i.e., the nature or circumstances) any such interview occurred and supporting documentation or other evidence showing when and how the initial informal interview was conducted." (Doc. 17 at 1.)

currently detained at the Greene County Justice Center in Springfield, Missouri. (Doc. 1-3 at ¶ 20.) Officer McNary attests that Petitioner will not be removed from the United States until the Board of Immigration Appeals rules on the currently pending motion to reopen. (Doc. 7-1 at ¶ 31; *see* Doc. 18-1 at 3, ¶ 16 (Deportation Officer Saez attesting to the same).)

**Discussion**

In this habeas action brought under 28 U.S.C. § 2241, Petitioner seeks release from her post-removal-order detention, along with other declaratory and injunctive relief relating to the lawfulness of her current detention. Petitioner alleges in Count 3, *inter alia*, that federal immigration authorities violated her constitutional rights to procedural due process because she was not afforded the initial informal interview immediately following her detention as required by ICE's own regulations.

As indicated above, the Notice of Revocation of Release issued in Petitioner's immigration case cited two detention-related ICE regulations—8 C.F.R. § 241.4 and 8 C.F.R. § 241.13. Both regulations require a *prompt* initial informal interview to allow the alien being detained upon revocation of supervised release the "opportunity to respond to the reasons for revocation stated in the notification." Ultimately, Federal Respondents provide no evidence—despite having ample opportunity to do so—to dispute Petitioner's allegations in her verified petition and attached affidavit that, not only did she not receive notice of the revocation of supervision prior to her May 27, 2025 arrest, but that no initial informal interview or other administrative process was provided regarding the revocation of her supervision and her detention.[6] Instead, Federal Respondents argue only that the Court lacks habeas jurisdiction pursuant to the jurisdiction-stripping provisions within 8 U.S.C. § 1252.

### A. The Court has habeas jurisdiction to consider Count 3, asserting a constitutional procedural due process claim to Petitioner's detention

The subject-matter jurisdiction of all lower federal courts is established by Congress, subject otherwise to the limits established by the Constitution (such as Article III's case-and-controversy requirement). *See Kontrick v. Ryan*, 540 U.S. 443, 452 (2004) (citing U.S. Const. art.

---

[6] Prior to the writ hearing Petitioner notified the Court that ICE had completed a 90-day custody review and determined that pursuant to 8 C.F.R. § 241.4(e), (f), and (g), Petitioner would be maintained in custody because "ICE is in receipt of or expects to receive the necessary travel documents to effectuate [Petitioner's] removal, and removal is practicable, likely to occur in the reasonably foreseeable future, and in the public interest. (Doc. 15-1 at 1.)

5

III, § 1); *Friends of Earth v. U.S. EPA*, 333 F.3d 184, 187 (D.C. Cir. 2003) ("A federal court's subject-matter jurisdiction, constitutionally limited by Article III, extends only so far as the Congress provides by statute." (internal quotation marks omitted)).  Title 28 U.S.C. § 2241 codifies federal habeas corpus subject-matter jurisdiction.  It provides that the Court may grant the writ of habeas corpus on application of a person (including an alien unlawfully in the United States) held "in custody in violation of the Constitution or laws or treaties of the United States."

In the immigration law context, "Congress has enacted several statutory provisions that limit the circumstances in which judicial review of deportation decisions is available." *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).  Put another way, Congress has exercised its authority to limit the Court's subject-matter jurisdiction as to certain matters and decisions made in the federal immigration context.  One such provision is 8 U.S.C. § 1252(g), which limits the subject-matter jurisdiction (including habeas jurisdiction) as follows:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title,[7] no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General[8] to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

The scope of the jurisdictional bar established in § 1252(g) thus has two primary components:  (1) it bars claims or causes "arising from" (2) a "decision or action . . . to commence proceedings, adjudicate cases, or execute removal orders . . . ."  *See Jennings v. Rodriguez*, 583 U.S. 281, 292-93 (2018) (J. Alito, joined in this portion of the majority opinion only by C.J. Roberts and J. Kennedy) (in considering a similar jurisdiction-limiting provision, § 1252(b)(9), assuming for sake of argument that "actions taken with respect" to the class of aliens in that case "constitute 'actions taken to remove them from the United States'" to consider "whether the legal questions that we must decide 'arise from' the actions taken to remove these aliens" (cleaned up)).

More than twenty years ago, the Supreme Court made clear that § 1252(g) should be given a narrow construction.  Specifically, in *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471 (1999), the Supreme Court held that § 1252(g) "applies only to three discrete actions

---

[7] Title 28 U.S.C. § 1361 provides for the writ of mandamus and 28 U.S.C. § 1651 is referred to as the "All Writs Act."

[8] Now, the Secretary of the Department of Homeland Security.  *See Silva v. United States*, 866 F.3d 938, 940 n.2 (8th Cir. 2017).

that the [Secretary of the Department of Homeland Security] may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Id.* at 482 (emphasis added by *Reno*); *see Jennings*, 583 U.S. at 294 (reasoning that the Supreme Court in *Reno* "did not interpret [§ 1252(g)'s] language to sweep in any claim that can technically be said to 'arise from' the three listed actions . . . [i]nstead, we read the language to refer to just those three specific actions themselves") (J. Alito, joined in this part of the majority opinion by C.J. Roberts and J. Kennedy).[9] In a similar vein, the Eighth Circuit has narrowly construed subsection (g)'s "arising from" component, holding that the provision strips subject-matter jurisdiction of federal courts only as to those claims that are "connected directly and immediately" to those three discrete actions or events. *Silva v. United States*, 866 F.3d 938, 940 (8th Cir. 2017). Put another way, § 1252(g) does not bar jurisdiction over challenges that are "collateral to" a decision or action to execute a removal order. *Kong v. United States*, 62 F.4th 608, 617 (1st Cir. 2023) (holding that § 1252(g) did not bar habeas claims asserting "illegal detention" because the petitioner "does not challenge the decision to try to execute his removal").[10]

---

[9] In *Jennings*, Justice Alito reasoned that interpreting a similar jurisdiction-limiting provision—as set out in subsection (b)(9) which reserves for a petition for review before the appropriate circuit court of appeals "[j]udicial review of all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States"—in a but-for sense (that is, where a claim is "said to 'aris[e] from' actions taken to remove the aliens in the sense that the aliens' injuries would never have occurred if they had not been placed in detention") would "lead[] to results that no sensible person could have intended." *Id.* at 293, 294 (cleaned up). In short, the three justices reasoned that "cramming judicial review of those questions into the review of final removal orders would be absurd." *Id.* at 293.

Federal Respondents also argue that subsection (b)(9) separately bars judicial review of Petitioner's habeas claims in this case. Not so. The Supreme Court, favorably citing Justice Alito's reasoning in *Jennings*, has recognized that subsection (b)(9) employs "targeted language" that "does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) (cleaned up). Petitioner's habeas claim asserted in Count 3 challenging the lawfulness of her detention under the procedural due process guarantees of the U.S. Constitution does not seek review of (or challenge) an order of removal, the decision to seek removal, or the process by which removability will be (or was) determined. Subsection (b)(9) does not separately bar the Court's habeas jurisdiction.

[10] Federal Respondents heavily rely on a non-binding out-of-circuit opinion of the Third Circuit in *Tazu v. Attorney General United States*, 975 F.3d 292 (3d Cir. 2020), which held that § 1252(g) barred judicial review of habeas claims by an alien asserting similar due-process challenges to his detention as Petitioner does here. In that case, the Third Circuit found that the detention-related challenges fell within the scope of § 1252(g)'s jurisdictional bar, reasoning that "a brief door-to-plane detention is integral to the act of executing a removal order." *Id.* at 298 (cleaned up). The Court is not persuaded by the Third Circuit's reasoning in *Tazu*, which applies § 1252(g) in a broader, rather than narrower, sense.

7

Fundamentally, § 1252(g) bars judicial review of claims that implicate, challenge, or seek review any exercise of the Secretary of Homeland Security's discretion. *See Hanggi v. Holder*, 563 F.3d 378, 383 (8th Cir. 2009); *Zadvydas*, 533 U.S. at 688 (holding in that case that a challenge to "the extent" of the Government's authority to detain is not a challenge "seek[ing] review of the Attorney General's exercise of discretion"); *Reno*, 525 U.S. at 485 n.9 (observing that § 1252(g) "was directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion"). Thus, the narrow scope of § 1252(g) does not cover "claims [that] are collateral to the Government's decision to execute the final order of removal," for instance, claims seeking relief based upon the Government's alleged failure to comply with its own regulations regarding the required administrative processes after an alien is detained. *Zhu v. Genalo*, No. 1:25-cv-06523 (JLR), 2025 WL 2452352, at *3 (S.D.N.Y. Aug. 26, 2025); *see, e.g.*, *K.E.O. v. Woosley*, No. 4:25-cv-74-RGJ, 2025 WL 2553394, at *3 (W.D. Ky. Sept. 4, 2025) (holding that the court had jurisdiction to consider a habeas challenge to the legality of an alien's detention, distinguished from a challenge to the "execution of her removal"); *Santamaria Orellana v. Baker*, No. 25-1788-TDC, 2025 WL 2444087, at *3 (D. Md. Aug. 25, 2025); *see also Zadvydas*, 533 U.S. at 688 (recognizing that a "challenge [to] the extent of the Attorney General's [statutory] authority under the post-removal-period detention statute . . . is not a matter of discretion", and therefore "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention").

In *Humphries v. Various Federal USINS Employees*, 164 F.3d 936 (5th Cir. 1999)—cited by the Eighth Circuit in *Silva*—the Fifth Circuit persuasively examined the "spectrum" of the definition of "arising from" as set forth in § 1252(g). On one end are "claims clearly not included within the definition of 'arising from,' *i.e.*, those claims with no more than a weak, remote, or tenuous connection to a 'decision or action . . . to commence proceedings, adjudicate cases, or execute removal orders." *Id.* at 943. At the other end are "claims that are clearly included," that is "claims [that are] connected directly and immediately with a 'decision or action . . . to commence proceedings, adjudicate cases, or execute removal orders.'" *Id.*

Applying this framework the Fifth Circuit in *Humphries* found that an alien's habeas claims challenging the conditions of his confinement (as opposed to challenging the "fact of his confinement") were not barred by § 1252(g). *Id.* at 944, n.8. "[T]he fact that Humphries would never have suffered the alleged injuries had he never been placed in detention tells us more about

8

fate than origins of Humphries' cause of action." *Id.* at 944; *see also Herbert L.R. v. Tritten*, 421 F. Supp. 3d 688, 692 (D. Minn. 2019) (recognizing that whether a claim is independent of a removal order "turn[s] on the substance of the relief that a plaintiff is seeking" (quotation marks omitted).) In contrast, the Fifth Circuit held that the alien's habeas claim for "retaliatory exclusion" (i.e., that federal immigration authorities conspired to exclude him in retaliation for exercising his First Amendment rights) "bears more than a cursory relationship to the Attorney General's decision to exclude Humphries." *Humphries*, 164 F.3d at 945. In other words, unlike a claim challenging the conditions of his confinement in detention, the First Amendment retaliation claim was barred by § 1252(g) because the Government's "decision to place Humphries in exclusion proceedings appears to provide the most direct, immediate, and recognizable cause of Humphries' injury." *Id.*[11]

The Court is persuaded that Petitioner's procedural due process habeas claim regarding notice and an opportunity to be heard—i.e., principally by ICE's failure to conduct the required initial informal interview in violation of its own regulations—is more like a conditions-of-confinement claim than not. Petitioner does not challenge the *fact* of her detention, but whether the constitutional rights to which she is guaranteed, including the right to procedural due process, were violated in the course of her detention, which is collateral to the decision to execute the final order of removal. Put another way, whether Petitioner's constitutional rights were violated, which turns in this case on whether ICE failed to conduct the initial revocation interview as required under its own regulations and whether the failure to do so violated Petitioner's constitutional right to procedural due process, is not directly and immediately connected to the execution of the removal order. It may be a part of the deportation process, but § 1252(g) does not bar habeas jurisdiction so broadly. *See Reno*, 525 U.S. at 482. For this detention-related claim, "review is now or never." *E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 180 (3d Cir. 2020).[12]

---

[11] Although *Humphries* was decided by the Fifth Circuit before the Supreme Court's seminal case interpreting § 1252(g) in *Reno*, the Fifth Circuit has recognized that *Reno* "does not change this court's interpretation in *Humphries* of 'arising from' in § 1252(g)." *Foster v. Townsley*, 243 F.3d 210, 213 n.2 (5th Cir. 2001).

[12] There is good reason that § 1252(g) is to be interpreted narrowly here. If Federal Respondents were correct that § 1252(g) bars the Court's habeas jurisdiction to consider even Count 3, the Court would have a substantial concern that applying § 1252(g) to bar Petitioner's procedural due process habeas claim would run afoul of the fundamental minimum habeas jurisdiction effectively secured by the Suspension Clause. Federal Respondents do not persuasively argue in their supplemental briefing that the statutory scheme provides a "collateral remedy which is neither inadequate nor ineffective to test the legality of [Petitioner]'s detention." *Mohamed v. Gonzales*, 477 F.3d 522, 525 (8th Cir. 2007) (quoting *Swain v. Pressley*, 430 U.S. 372, 381 (1977)). They rely on two subsections of § 1252—(a)(2)(D) and (b)(9)—as

The alleged constitutional injury for which Petitioner seeks relief in habeas (specifically release from custodial detention) bears less-than an immediate and direct connection to the Government's decision or action to execute the final removal order in her case. While the alleged constitutional injury would not have arisen had she not been arrested by ICE officers after the Notice of Revocation of Release had been issued, § 1252(g) as properly and narrowly construed does not apply to her habeas claim challenging ICE's post-detention conduct and specifically whether the failure to provide the initial informal interview violated the due process rights to which she is entitled. *See Mochama v. Zwetow*, No. 14-2121-KHV, 2017 WL 36363, at *8 (D. Kan. Jan. 3, 2017) (holding that the court had jurisdiction as to due process claim that a detained alien was placed in solitary confinement without notice or opportunity to be heard because the claim did not seek review of the decision to execute the removal order and the claim's connection to the execution of the removal order—i.e., that Mochama would not have been placed in solitary confinement if the Government had not decided to execute the removal order—was not sufficiently direct). She does not challenge or seek habeas relief related to the execution of the final order of removal itself, only her detention and the constitutional due process rights that are implicated or affected by the detention and not any due process rights that are directly and immediately connected with the execution of the final order of removal, i.e., her removal from the United States.

---

showing that Petitioner has an adequate and effective substitute to challenge the constitutionality of her detention other than in habeas. Subsection (a)(2)(D) permits courts of appeals in a petition for review to "review all constitutional claims and questions of law *in the removal order*," *Mohamed*, 477 F.3d at 526 (emphasis added). Subsection (b)(9), as indicated above, funnels "all issues arising from removal proceedings into a petition for review." *Vetcher v. Sessions*, 316 F. Supp. 3d 70, 76 (D.D.C. 2018). The Court did not locate, and Federal Respondents did not provide, any caselaw in which an alien pursued a similar constitutional challenge to their post-removal-order detention in a petition for review. In short, even if the Court were persuaded that Petitioner's procedural-due-process challenge was facially barred by the language of § 1252(g)—it does not—the Court would alternatively exercise subject-matter jurisdiction in this habeas action in light of the Suspension Clause. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 106, 119 (2020) (recognizing that "[h]abeas has traditionally been a means to secure *release* from unlawful detention," and that "habeas is at its core a remedy for unlawful executive detention"); *see also Trump v. J.G.G.*, 604 U.S. __, 145 S. Ct. 1003, 1005 (2025) (per curiam) (recognizing that claims in habeas by petitioners seeking equitable relief against the implementation of Proclamation No. 10903, invoking the Alien Enemies Act by challenging their removability under the Alien Enemies Act "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas" notwithstanding that the Alien Enemies Act "largely precludes judicial review" (cleaned up)).

### B. Petitioner is entitled to habeas corpus relief because ICE violated her constitutional right to procedural due process

"The essence of due process is the requirement that a person in jeopardy of serious loss be given notice of the case against him and opportunity to meet it." *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976) (cleaned up). The core of Petitioner's habeas claim asserted in Count 3—and for which the Court finds she is entitled to habeas relief—is that after the 2018 Order of Supervision was revoked, she was detained without adequate notice and "an opportunity to be heard" when ICE failed to provide the initial informal revocation interview plainly and expressly required under its own regulations.

As noted above, the Notice of Revocation of Release cited two regulatory provisions, 8 C.F.R. §§ 241.4 and 241.13, both of which require an initial informal interview upon detention as part of the regulatorily codified process by which an alien who is detained upon revocation of a supervised release order can be notified of, and can contest and challenge, the reasons for their revocation and detention. Section 241.4(l)(1) specifically provides:

> Upon revocation, the alien will be notified of the reasons for revocation of his or her release or parole. The alien will be afforded an initial informal interview promptly after his or her return to [ICE] custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.

Subsection (l)(3) provides that if an alien is not release from custody following the initial interview, a further review process will occur to include "notification to the alien of a records review and scheduling of an interview, which will ordinarily be expected to occur within approximately three months after release is revoked," which "custody review will include a final evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release." Following this two-stage custody review starting with the initial informal interview, "custody reviews will [thereafter] be conducted annually . . . ." § 241.4(l)(3).

Similarly, § 241.13(i)(3) provides:

> Upon revocation, the alien will be notified of the reasons for revocation of his or her release. [ICE] will conduct an initial informal interview promptly after his or her return to [ICE] custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows that there is no significant likelihood he or she [will] be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a

11

determination whether the facts as determined warrant revocation and further denial of release.

If release is denied following the initial informal interview under § 241.13(i)(3), "the alien may submit a request for review of his or her detention . . . six months after [ICE]'s last denial of release under this section." § 241.13(j).

There is no factual dispute here that the initial informal interview did not occur as required. Federal Respondents have not provided any evidence to the contrary. Nor did Federal Respondents provide any argument addressing the merits of Petitioner's procedural due process claim, instead choosing to rely only on a jurisdictional argument. Federal district courts across the country have recently found that an initial informal interview is required under the relevant regulations when an order of supervision is revoked (regardless of the actual reason given for revocation) and that ICE violates a detained alien's constitutional rights to procedural due process when the alien is not afforded the initial informal interview that is plainly required under ICE's own regulations. *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *6-10 (S.D. Fla. Sept. 9, 2025) (collecting cases); *Zhu*, 2025 WL 2452352, at *5-9; *Roble v. Bondi*, No. 25-cv-3196 (LMP/LIB), 2025 WL 2443453, at *5 (D. Minn. Aug. 25, 2025); *Nguyen v. Hyde*, __ F. Supp. 3d __, 2025 WL 1725791, at *5 (D. Mass. June 20, 2025); *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 163-64 (W.D.N.Y. May 2, 2025) (collecting cases and rejecting the government's argument that an initial informal interview is only required if supervision is revoked based on a violation of conditions of release); *K.E.O.*, 2025 WL 2553394, at *4-6 (finding due process violation where ICE failed to provide notice and interview as required under 8 C.F.R. § 241.13). These cases hold that where ICE has failed to follow its own regulations in this regard, an alien's detention is unlawful, and habeas relief is therefore warranted. The Court agrees.

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333 (internal quotation marks omitted). It has been long established that "administrative agencies may not take action inconsistent with their internal regulations when it would affect individual rights." *In re United States*, 197 F.3d 310, 315 (8th Cir. 1999) (discussing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266-68 (1954)). ICE's regulations requiring a prompt initial interview "confer important procedural benefits upon individuals in the face of otherwise unfettered discretion." *Rochling v. Department of Veterans Affairs*, 725 F.3d 927, 939 (8th Cir. 2013). No showing of prejudice is necessary to afford habeas relief for ICE's failure to abide by its own regulations in this regard.

12

*See Vitarelli v. Seaton*, 359 U.S. 535, 545 (1959) (holding that a discharged employee was entitled to reinstatement "[b]ecause the proceedings attendant upon petitioner's dismissal from government service . . . fell substantially short of the requirements of the applicable departmental regulations" and thus fundamentally failed to secure the employee's notice and opportunity to be heard, the "dismissal was illegal and of no effect"); *cf. Rochling*, 725 F.3d at 939 (showing of prejudice was required based on claim seeking relief for agency's alleged failure to follow its own regulations where the applicable regulation was "designed to provide the agency with information it needed to reach an informed decision" rather than "confer[ring] important procedural benefits upon individuals in the face of otherwise unfettered discretion"); *see also Derrickson v. St. Louis Bd. of Educ.*, 703 F.2d 309, 315 (8th Cir. 1983) (recognizing that a state agency's failure to follow its own regulations may result in a violation of the Due Process Clause).

The initial interview requirement codified under ICE's own regulations provides aliens, who are detained after revocation of an order of supervision, with both notice of the factual and legal reasons for the revocation and affords them the opportunity to challenge those reasons for their detention. That process did not occur here. Petitioner's detention therefore is contrary to the laws of the United States, and she is entitled to habeas corpus relief. *See* 28 U.S.C. § 2241(c)(3); *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects."). Federal Respondents do not present any substantive argument to the contrary.

## Conclusion

Therefore, after careful consideration and review, the Court **ORDERS** that the verified petition for writ of habeas corpus is **GRANTED as to Count 3** for the reasons set out above, and accordingly, the Court **FURTHER ORDERS** that (1) Petitioner be immediately released, and (2) upon her immediate release, the conditions of the prior order of supervision which were in effect prior to her detention are reinstated.

**IT IS SO ORDERED**.

                                                s/ Roseann A. Ketchmark
                                                ROSEANN A. KETCHMARK, JUDGE
                                                UNITED STATES DISTRICT COURT

DATED: October 7, 2025